E-filing

$5^{3o}$ **FILED**

1 | <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

JUL 1 5 2008

2 | Name *Johnson    Michael    Tyrone*
     (Last)          (First)         (Initial)

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

3 | Prisoner Number  *F06081*

4

5 | Institutional Address *Hiway 1 P.O. Box 8103 San Luis Obispo*

*CA 93403-8103*

6 | =========================================================================

**UNITED STATES DISTRICT COURT**

7 | **NORTHERN DISTRICT OF CALIFORNIA**

8 | *Michael Tyrone Johnson*
     (Enter the full name of plaintiff in this action.)    )

9 | **08**    **3429**

CV

10 | vs.    Case No.
          (To be provided by the clerk of court)

*John Marshall, Warden*

11 | **PETITION FOR A WRIT MMC**
      **OF HABEAS CORPUS**

12 |

13 | **(PR)**

14 | (Enter the full name of respondent(s) or jailor in this action)

15 |

16 | =========================================================================

<u>Read Comments Carefully Before Filling In</u>

17 | <u>When and Where to File</u>

18 | You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23 | If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located. If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS    -1-

1 | <u>Who to Name as Respondent</u>

2 |     You must name the person in whose actual custody you are. This usually means the Warden or

3 | jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 | you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 | respondents.

6 |     If you are not presently in custody pursuant to the state judgment against which you seek relief

7 | but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 | custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 | was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11 |     1. What sentence are you challenging in this petition?

12 |     (a)   Name and location of court that imposed sentence (for example; Alameda

13 |     County Superior Court, Oakland):

14-15 | *San Mateo County Superior Court 400-County Center, Redwood City CA 94063-1655*
Court       Location

16 |     (b)   Case number, if known *SC056779*

17 |     (c)   Date and terms of sentence *December 6, 2005*

18 |     (d)   Are you now in custody serving this term? (Custody means being in jail, on

19 |     parole or probation, etc.)    Yes _X_   No _____

20 |     Where?

21 |     Name of Institution: *California Men's Colony-West*

22 |     Address: *Hiway 1 San Luis Obispo CA*

23 |     2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 | more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 | challenging more than one sentence, you should file a different petition for each sentence.)

26 | *§§ 245(a)(1), 273.5(a), 12022.7(e) ; 7-years*

27 | 

28 | 

PET. FOR WRIT OF HAB. CORPUS    -3-

1    3. Did you have any of the following?

2        Arraignment:                          Yes _X_    No _____

3        Preliminary Hearing:                  Yes _X_    No _____

4        Motion to Suppress:                   Yes _X_    No _____

5    4. How did you plead?

6        Guilty _____    Not Guilty _X_    Nolo Contendere _____

7        Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9        Jury _X_    Judge alone _____    Judge alone on a transcript _____

10   6. Did you testify at your trial?                  Yes _____    No _X_

11   7. Did you have an attorney at the following proceedings:

12       (a)   Arraignment                     Yes _X_    No _____

13       (b)   Preliminary hearing             Yes _X_    No _____

14       (c)   Time of plea                    Yes _n.a._    No _____

15       (d)   Trial                           Yes _X_    No _____

16       (e)   Sentencing                      Yes _X_    No _____

17       (f)   Appeal                          Yes _X_    No _____

18       (g)   Other post-conviction proceeding    Yes _____    No _X_

19   8. Did you appeal your conviction?                 Yes _X_    No _____

20       (a)   If you did, to what court(s) did you appeal?

21             Court of Appeal                  Yes _X_    No _____

22             Year: _2006_    Result: _denied_

23             Supreme Court of California      Yes _X_    No _____

24             Year: _2007_    Result: _denied_

25             Any other court                  Yes _____    No _____

26             Year: _____    Result: _____

27

28       (b)   If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    -4 -

1      petition?           Yes _✗_    No____

2    (c)   Was there an opinion?       Yes ____    No____

3    (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                             Yes ____    No_✗_

5       If you did, give the name of the court and the result:

6      _____

7      _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?    *State*    Yes _✗_    No____

10      [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16    (a)   If you sought relief in any proceeding other than an appeal, answer the following

17       questions for each proceeding. Attach extra paper if you need more space.

18      I.    Name of Court: *Superior Court of San Mateo*

19         Type of Proceeding: *habeas corpus*

20         Grounds raised (Be brief but specific):

21         a. *denied Sixth Amendment trial as*

22         b. *of right; cumulative errors*

23         c._____

24         d._____

25         Result: *denied*        Date of Result:_____

26      II.    Name of Court: *First Appellate District (S.F.)*

27         Type of Proceeding: *habeas corpus*

28         Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS     -5-

1  need more space.  Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One: _denied Sixth Amendment right to im-_

6  _partial Jury_

7  Supporting Facts: _petitioner is African American, the_

8  _alleged victim Hispanic. None of the jurors_

9  _was an African American; there were no African_

10  _Americans jurors in either of the panels used_

11  Claim Two: _actual innoncence_

12

13  Supporting Facts: _petitioner is convicted of a crime he_

14  _did NOT do; he did not accept a NO prison_

15  _term DEAL by prosecutor because he is "innocent."_

16  _The injury to his girlfriend which occurred_

17  Claim Three: _cumulative Errors denied a fair trial_

18

19  Supporting Facts: _a fair trial is subsumed in the lang-_

20  _uage of the Sixth Amendment. Petitioner was_

21  _NOT allowed to present Evidence crucial to his_

22  _Defense. The very word trial connotes decisions_

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

1   Claim One. (continued.)

2

3   to pick the Jury. There were Hispanic jurors voir
4   dired, with several sitting on petite Jury. The
5   alleged victim was peculiarly small in stature,
6   the defendant tall and muscular build. This
7   was an issue peculiar to prosecution. As defense
8   counsel wrote (after the fact) "Prejudice is a
9   subtle monster that hides within the best of
10  intentions" (Letter to Probation Department, Nov.
11  17, 2005). Petitioner appealed this Issue on habeas
12  corpus, pointed up by the fact San Mateo and
13  surrounding area had a distinct African
14  American vicinage from which to choose from,
15  but did NOT; San Mateo County citizenry is multi-
16  cultured. Petitioner pointed-up that, Juror
17  Questionnaire, Form, was flawed in regard.
18  Petitioner included 2004 Census reports and the
19  Questionnaire Form and subsequent rules, as proof
20  of claim. The Sixth Amendment requires Jury
21  to be drawn from a fair cross section of Commun-
22  ity. See, Taylor vs. Louisiana (1975) 419 U.S. 522, 95
23  S.Ct. 692, 698, 42 L.Ed.2d 690, 698; People vs. Harris
24  (1984) 36 C.3d. 36, 48, 201 C.R. 782, 679 P.2d 433. Pe-
25  titioner was greatly prejudiced by total exclusion
26  in this peculiarly credibility and sequacious
27  case, Petitioner is actually innocent.

28

7

1  Claim Two. (continued)

2

3  was a result of an accidental fall; cause being
4  a medical condition unbeknownst to petitioner
5  at the time, a Seizure Disorder, or she just fell
6  losing her balance. The alleged victim, it was
7  later revealed after an automobile accident
8  in X-rays taken, had an _old_ right "parietal"
9  skull fracture (her injury from the accidental
10  fall was right "occipital" non-depression skull
11  fracture.) After the accidental fall, she had
12  "complete memory loss". The alleged victim, it
13  was revealed had a history of physical abuse
14  at the hands of her Father. The Father did not
15  approve of his daughter's relationship with peti-
16  tioner. He eventually threw her out of the house.
17  The incidents that led-up to her supposed mem-
18  ory recall were merely "personal opinions", her
19  testimony illicited a "product of confabulation".
20  ALL the Expert witnesses testified: an "uncon-
21  scious" person cannot remember. The Medical
22  Scienter Evidence was alleged victim was [un].
23  conscious. The Evidence of her "confabulatory
24  testimony" is overwhelming, but was prevented
25  by trial court judge's illegal rulings. This was a
26  peculiarly credibility case and for judge to
27  disallow Text Messages between alleged victim
28  and defendant violated Due Process expected in

8

1 Claim Two. (continued)
2
3 United States vs. McMillan (8th Cir 1974) 508 F.2d
4 101,103 (discussion on 7-factors to be used to de-
5 termine the admissibility of tape recordings). cf.
6 United States vs. McCowan (8th Cir 1983) (per curium)
7 706 F.2d 863, 865; United States vs. Wells (8th Cir.
8 2003) No. 02-2233 (use of pager and cell phone
9 memory banks, were HELD admissible). Abuse
10 of discretion reviewed under United vs. Roach.
11 (8th Cir 1994) 28 F.3d 729, 732. The "text messages"
12 in question, instant case, prove beyond any
13 reasonable doubt alleged victim's testimony a
14 product of confabulation. Petitioner proofed
15 his Claim in Exhibit his State petition (in Exhi-
16 bit, this Petition). Petitioner's Text Message Evi-
17 dence meets all 7-factors. They prove "mental
18 intent" of alleged victim, reasons why she
19 "would/did" prevaricate[.] Trial court judge allow-
20 ed alleged victim's Mother's testimony, but
21 NOT defendant's Mother's testimony; [both]
22 Mother's Testimony was [e]ither spontaneous (or)
23 not. Defendant's Mother's testimony was credible,
24 an honest, God fearing person her entire Life; pre-
25 vented was "stiff legs" Evidence, an sympton of
26 Seizure. Petitioner is "innocent." (sic) Included
27 in petitioner's State habeas corpus is full discus-

9

1  Claim Two. (continued)

2

3  sion with Exhibits of what is contained in

4  "text messages" and "Mother of defendant" testi-

5  mony. (See, Attachments, hereto included as Exhibit

6  this Petition.)

7

8  ### Statement of Facts

9  Petitioner, under penalty of perjury pursuant

10  to 28 U.S.C. §1746, declares everything contained

11  in this petition favorable to his "actual innocence"

12  is the TRUTH. Prosecutrix's testimony was con-

13  fabulation, contrived in the minds of other's.

14  Very many "contradictory" statements were made

15  by prosecutrix, such as follows:

16

17  ### Following are Exerpts

18  These exerpts proof prosecutrix was giving

19  perjured/or confounded testimony; proof she did

20  NOT remember. Petitioner points out that prosecu-

21  trix's Glascow Coma Scale rating was "eye 3, verbal

22  4, and motor 6", which puts her response level at

23  "inappropriate, moaning, decorticate" or better

24  stated, NOTHING said (or repeated by other's) could

25  be credible/or reliable, as true spontaneous

26  statements. Vandeclof's Theory, and Expert Witness

27  's Testimony: A conscious person will remember pre-

28  cisely. Prosecutrix does NOT remember anything with

precision.

10

Claim Two. (continued)

The following are some, but not all the contradions by prosecutrix, proof that her memory and testimony was not truthful, but suborned, a prevarication or confabulation : (not necessarily in chronilogical order, or of importance)

Exhibit H_ E.P.O. dated*[Nov. 24, 2004] prosecutrix states, "she doesn't remember"

Dr. Jun, interview, dated [April 27, 2004] prosecutrix told Doctor, "she does remember" (p. 11, Appellant's Brief)

Audio Tape dated late[May, 2004] prosecutrix states "she doesn't remember" (Exhibit D, p2, tape 2) ———— o ————

E.P.O. No. 079377, dated[April 20, 2004] prosecutrix states, "she told police officer about the history of violence in their relationship"

Trial Transcript, pp. 345, 346, prosecutrix states, "there was no previous violence in their relationship" ———— o ———— o ————

E.P.O. No. 079377, dated*[April 22, 2004] prosecutrix states, "The officer reported she made a statement to the nurse that petitioner threw something at her"

Trial Transcript, p. 287, "prosecutrix testifies she has no memory of anything

CMC-CE-008
(08/04) 0901

Claim Two. (continued)

being thrown at her, nor that she told
the nurse that "

———— o ———— o ————

Trial Transcript, p. 371, "prosecutrix
testifies she wasn't dragged by her
heels" (same) at Preliminary Hearing
Preliminary Hearing, p. 0070. Officer
testifies "prosecutrix said she was
dragged by her heels"

———— o ————
Throughout and Preliminary Hearing,
pp. 0025, 0035, "prosecutrix testifies
she was blind for a month and half"
Prosecutrix Medical Records, Evidence
is her cranial nerves in tact, and p.
658, Trial Transcript, on date*[April
27th, 2004], prosecute reads with
either eye. Accident date was*[April
10, 2004.]

———— o ———— o ————

Trial Transcripts, pp. 269, 330, 331, 332,
"prosecutrix testifies, she had no con-
tact with defendant at T.J. Friday's"
Trial Transcript, p. 555, Officer testifies,
"prosecutrix DID have contact with
defendant" (Line 23-25)

———— o ———— o ·

CMC-CE-008
(08/04) 0901

1 | Claim Two. (con't)

2

3 | Preliminary Hearing, p.    ; "prosecu-
4 | trix testifies she called her girlfriend
5 | Yessina at around 8:00 p.m."
6 | Trial Transcript, p. 634, "Yessina testifies
7 | she received a phone call from prosecutrix
8 | at 5:00 to 6:00 pm"

⸻ o ⸻ o ⸻

9

10 | Preliminary Hearing, p. 51, "prosecutrix
11 | states, she doesn't know how she got
12 | on the ground" but, gave statement
13 | to police, she knew defendant stepped
14 | on her head because she looked at pic-
15 | tures"

⸻ ● ⸻ o ⸻

16

17 | Trial Transcript, p. 292, "prosecutrix
18 | testifies she has no recollection of
19 | photographs being taken" [evidence
20 | of at least semi-comatose state;
21 | see Glascow Coma Scale test score.]

⸻ o ⸻ o ⸻

22

23 | *Note: Petitioner has included Exerpts (as to Claim
24 | Two) in Attachment (before) Attachments included with
25 | his State Habeas Corpus. Because, prosecutrix's testi-
26 | mony is so chemerical/Kafkaesque, a mere reading
27 | of the Exerpts surrounding her testimony on "how
28 | she remembers the event" will demonstrate to this

Claim Two. (con't.)

Court that, she did NOT know/or remember what did or did NOT happen : first, she doesn't know, if the accident occurred inside or outside of the house, that her head hit the ground or cement. Her description of the alleged attack was as such that her face would have been damaged, not the back of her head. There were NO picture evidence of bruises in the stomach area, because NO kicking occurred. She testifies she was dragged, but then she wasn't dragged, but picked-up. The only honest testimony was on p. 0042, "A. I don't remember that part, to be honest." See, Mesareosh vs United States (1956) 352 U.S. 1, 1 L. Ed 2d 1, 77 S. Ct. 1 _ Truthfulness of Testimony ... "The dignity of the United States Government will not permit the conviction of any person on tainted testimony." The ONLY logical conclusion, and is Medically True, the first Brain Trauma Injury [the X-rays of an old right parietal skull fracture] was the cause of Seizure Disorder ; prosecutrix's Glascow Coma Scale test results, a result of "postictal state". WAS prosecutrix a victim of "memory manipulation"? Ultimately, the [l]atent evidence was there for Defense Counselor to present an "affirmative defense" of alleged victim's "previous abuse" and "brain trauma injury", and resulting Seizure, the cause of her accidental injury. He did NOT.

CMC-CE-008
(08/04) 0901

1  Claim Three. (continued)

2

3  on the evidence and arguments properly ad-
4  vanced in open court ( Bridges vs. California (1941)
5  314 U.S. 252, 271.; see, also, Irvine vs. California,
6  347 U.S. 128, 98 L. Ed. 501 "When a conviction is
7  secured by methods that offend the elementary
8  standards of justice, the defendant may invoke
9  the Fourteenth Amendment guarantee to a funda-
10  mentally fair trial.") Petitioner's trial was NOT
11  fair [because] of the aforementioned in _Claim One_
12  and _Claim Two_ [and] his _Defense Counselor was_
13  _Ineffective_, Trial Court Judge denied _Defense Theory_
14  supported by the Evidence, _Propensity evidence_
15  _was allowed_ that, was highly suspect and preju-
16  dicial, and the resulting Jury Instructions,
17  _Trial Court imposed an illegal enhancement_:

18

19  _Defense Counselor was Ineffective_, when he failed
20  to move to exclude purported hearsay statements
21  made by prosecutrix at the hospital, which were
22  made while under the influence of induced medi-
23  cines; counselor did NOT interview or subpoena
24  [Dr. Craig Hoffman], the first respondent Doctor,
25  to illicit testimony favorable to Defense. Dr. Hoff-
26  man's testimony could have been concrete to
27  girlfriend's "postictal" state, her "unconcious-
28  ness." Petitioner was denied his Sixth Amendment

Claim Three. (continued)

right to the effective assistance of counsel when defense counselor failed to cross-examine prosecutrix on the subject of "her Father's abuse of her" and that he forced her to leave home just before her "recovering" her memory; how many times he had badgered her, insisted that her boyfriend did this to her. A sampling of what evidence defense counselor did NOT illicite was included by petitioner in his State habeus corpus (Exhibit D, Tape 1, pp. 11, 12, 17, 18, 28, 29, Tape 2, pp. 7, 11) (hereto included and Exhibit in this Petition)

> p. 11 [Phone Call] "My mother told me. What am I suppose to do?" "My mom doesn't have a **social security** number... So they're going to take her from the United States. What am I suppose to do?"
> p. 12. "Once they look into my mom's records they' know she's here, an illegal, they're going to kick her out. What am I suppose to do?"
> p. 17. ... "why he beat you the other week? Yeah, because of my temperamental... BAM. He started hitting you. Um, just once. It was hard..."
> p. 18. "I mean he snapped he [inaudible]. So."
> p. 28. "Your father pushed you against the wall?" "Yeah... he always yells and

Claim Three. (continued)

throws things at me."

p. 29. ".. you said something about your
father slapping you? Oh. yeah, be-
cause he slapped me against the wall
and a couple of my memories came
back. But they were bad ones and I
told him and he slapped me one.
Then I turned around and I was just
Like, "Well, the truth hurts, doesn't
it?" and he slapped me again."
Because I told him something on the
memories that came back and there was
a little girl and they were bad. then
he slapped me and then I told him
then, "Well the truth hurts, doesn't
it?" And he slapped me again."

Tape 2, p. 7. " I mean if they find out
that we're talking, we'll get in trouble
and I'll get in trouble with my dad.
He'll beat me up even more [inaudible]"

p. 11 "It's just I have that feeling my
dad's going to do something to me."

One need only read the Phone conversations and
Restraining Orders to get the Truth of the matter,
instant case. Prosecutrix did NOT remember any-
thing between just before her Seizure or Ac-

17

1  Claim Three. (continued)

2

3  cident and when she finally came out of her [un]
4  consciousness. Prosecutrix did demonstrate
5  "transference", prescriptively so : ⟨in Psycho-
6  analysis⟩ a reproduction of emotions relating
7  to repressed experiences, esp. of childhood,
8  and the substitution of another person; to
9  wit, the Defendant. Prosecutrix virtually,
10  by no fault of her own, demonstrates her Father's
11  personality and character flaw : jealousy and
12  certain histrionic personality traits. e.g.
13  paranoia. She constantly demonstrated the above
14  behaviors throughout the pages of Transcript Record
15  and Phone Calls, Text Messages, Restraining Orders)
16  (Petitioner submits them all hereto included as Ex-
17  hibit this Petition). Prosecutrix testimony, her
18  conversations with Defendant replete with what
19  her Father did to her. E.g. she says Defendant
20  "threw something at her"; NOTHING was found,
21  yet, her Father did this to her :
22          Tape 1, p.28. "... every time he talks to me,
23          he just, he always yells and throws
24          things at me"
25  Prosecutrix, as part of her makeup, subjugates
26  herself to other's :
27          Tape 1, p.1. "And they told me ..."
28          Tape 1, p.7. "I mean everyone, your

18

1  Claim Three. (continued)

2

3        friends, my friends, fucking people

4        at J.C. Penny, my family."

5        Tape 1, p. 8. "Somebody told me. Yeah,

6        a lot of people were telling me..."

7        "A lot of people tell me... my dad.

8        Who else told me? A couple of nurses,

9        some other guys.". "They told me you

10       were with someone else."

11       Tape 1, p. 9. "They told me"

12       Tape 1, p. 11. "My mother told me"

13       Restraining Order. "My father told me"

14       "The officer reported that I made

15       statements to the nurse that respond-

16       ent threw something at me" "At

17       that time I didn't remember what

18       happened and I was asking my father

19       what had happened. At that time

20       my father didn't like my boyfriend

21       Michael, he wanted me to break up

22       with him, so he told me in the hospi-

23       tal that Michael Johnson hit me and

24       almost killed me."

25  Clearly defective was Defense Counsel's perform-

26  ance, [b]y NOT exacting such an obvious "affirm-

27  ative Defense", of alleged victim's Personality

28  Disorder (sic). Prosecutrix's spurious testimony,

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

1  Claim Three. (continued)

2

3  A product of "her psychogenesis, her psychas-
4  thenia." (sic) Combining the aforementioned
5  with the contradictory statements by prose-
6  cutrix set-forth in Claim Two, reasonable
7  probability reasonable Jury would find pro-
8  secutrix's testimony NOT credible, but con-
9  fabulation, "a product of other's and her sub-
10 jugation to them." The Evidence aforementioned
11 proves, as well, prosecutrix would prevaricate
12 to protect her Mother's "deportation" and out of
13 "fear" of her Father. Obvious was her co-dependency,
14 with her relationship failing with Defendant,
15 she is marrying someone else:

16          Tape 1, p30. "your going to marry this
17          guy because of what? I told you.
18          Why are you going to marry this guy?
19          I just told you. Do you want to marry
20          him? No, I don't. Why don't you? p.31
21          But I mean ... Why don't you want to
22          marry him? Because I care about
23          him but I'm not in love with him.
24          who do you love? You know. Who?
25          You. But you're going to marry him.
26          Yeah, because you don't want me so
27          I'm not going to be sticking up your
28          butt (?) saying, "Oh, come on, please, please"

20

1  Claim Three. (continued)

2

3    No. You're not -- you're going to marry
4    him because I don't call you? Not
5    because you don't call me, no, because
6    you don't care about me period. You
7    don't Like my dad. You're not think-
8    ing about talking to my dad or you're
9    not telling him so what's the point?
10 [S]eriously flawed was Defense Counselor's
11 approach to Defendant's Case. The alleged
12 victim obviously had character defects that
13 caused her to testify falsely. It was Ineffect-
14 ive Assistance of Counsel [w]ithout Batson-Wheeler
15 Motion. It is a Batson error with Racial dis-
16 crimination in selection of trial jury (Batson vs
17 Kentucky (1986) 476 U.S. 79, 90 L Ed 2d 69, 106 S.
18 Ct. 1712) California Law makes clear that a con-
19 stitutional violation may arise even when only
20 one of several members of a "cognizable group" is
21 improperly [e]xcluded (People vs Montiel (1993)
22 5 Cal 4th 877, 909, cert. denied (1994) 512 U.S. 1253.
23 [114 S. Ct 2782, 129 L.Ed.2d. 894].) With "total ex-
24 clusion" instant case, [o]n what basis could any
25 defense attorney NOT files a Batson-Wheeler Motion?
26 Petitioner was prejudiced without African-American
27 on his Jury, with his Case, "interracial." (sic)
28 Failure to introduce Evidence crucial for

1  Claim Three. (continued)
2
3  An "affirmative defense", the prosecutrix's [medical
4  condition/history, even probability of Personality
5  Disorder due to her Father's abuse of her. Defense
6  counselor attempts to (after the fact) by filing
7  Motion for Retrial. See, Exhibit C, with his
8  arguments in Points and Authority, which are
9  TRUE. From the beginning, Defense counselor
10  slighted Defendant's Defense by NOT introducing
11  Evidence of all the EPO's (emergency protection
12  orders); there is a "road map" in there, of prosecu-
13  trix's Personality Disorder; one whom is easily
14  persuaded by the people around her, proof of
15  "suborned/confounded" testimony which occurred.
16  [C]ompare the EPO's to all the Text Messages/Audio
17  tapes, and any reasonable Juror would distin-
18  guish prosecutrix's "volatility" and her
19  "lack of credibility" (sic). Why would De-
20  fense counselor not put Defendant's Exhibit
21  A, B, F, G, H, into Evidence for Jury to know?
22  The answer is obvious: Defense counselor's stategy
23  was skewed; in light of Trial court Judge's rulings
24  Defendant required every possible advantage..
25  There were other key factors fundamental to
26  Defendant's Defense. [B]oth [Ron Haysbert] and
27  [Jose Villa] were credible eye-witnesses that

22

1  Claim Three. (continued)
2
3  had they been subpoenaed, their testimony would
4  have discredited prosecutrix's testimony about
5  certain events. Ron Haysbert's testimony would
6  have placed prosecutrix at Defendant's work at
7  the time she testified she was home sleeping on
8  February 8th, 2005; Jose Villa's testimony would
9  have been, he was not working at J.C. Penny
10 in November, 2004, because stopped working there.
11 in September 2004, why didn't Defense counselor-
12 interview potential witness [Jasmine Kasner]
13 the neighbor whom witnessed what happened?
14 What possible strategy does Defense Attorney
15 have in mind NOT to investigate and interview-
16 [E]very possible lead, even if he didn't later
17 use them; without the interview, he couldn't
18 possibly know, what if? Even the blood evi-
19 dence in the house; was it all bovine or not?
20 Defense counselor did NOT, could NOT know?
21 There is the "first voluntary interview tape" De-
22 fendant gave. Officer Mchale, the day of the
23 accident that, NEVER made-it to the Evidence
24 Table.; [I]t contained evidence of alleged victim's
25 "stiff legs". At Preliminary Hearing, the evidence
26 was Defendant and. Girlfriend constantly were
27 in communication via "Text Messages" yet, Defense
28 counselor did NOT admit them all? Not least,

23

1 Claim Three. (continued)
2
3 is the fact Defense counselor did NOT object to
4 Audio Tape by Officer Neary that was "tainted"
5 (not a complete production, 40% of-it [un]
6 audible) Such is (4) fourth factor of MaMillan
7            "That changes, additions or deletions
8            have not been made in the recording"
9            United States vs McMillan (8th Cir 1974)
10           508 F.2d 101, 103.
11 Petitioner argued all the above in his State
12 habeas corpus, hereto included an Exhibit [and]
13 all Attachments, this Petition, that his Defense
14 Counselor was Ineffective by NOT doing All the
15 things any reasonable Defense Attorney is re-
16 quired: [I]nvestigate [E]very [P]ossible [D]EFENSE
17 before proceeding.
18
19         Trial court imposed an illegal enhancement;
20 Defense counselor failed to argue Point of Law.
21 Petitioner is sentenced concurrently to his convictions.
22 Penal Code §273.5. Calif, Rules of Court, rule 4.425
23 (b)(iii) states: "A fact that is an element of the crime
24 shall not be used to impose consecutive sentences."
25 An [element] of 273.5 is "corporal injury" (which
26 means bodily injury) and "traumatic condition"
27 (which means minor or serious injury) Since,
28 serious bodily injury is an element of 273.5 (a)

24

1   Claim Three. (continued)
2
3   and serious and great bodily injury in California
4   Jurisprudence are synonymous terms (People vs.
5   Hawkins (1993) 15 Cal. App. 4th. 1373, 1375, 19 Cal.
6   Reporter 2d 434), the enhancement of §12022.7
7   is an [illegal] enhancement. This enhancement
8   is Double Jeopardy. Under [b]oth State and
9   Federal Law, specific statute controls general
10  one. CalJic No. 9.35 in pertinent Part:
11          "In order to prove this crime, each
12          of the following elements must be proved
13          1) A person willfully inflicted bodily
14          injury upon a former cohabitant, and
15          2) The bodily injury resulted in a trau-
16          matic condition.
17  CalJic No. 9.35 (in Part) "bodily injury resulting
18  in a traumatic condition, is guilty of a violation
19  of Section 273.5 of the Penal Code, a crime. A
20  traumatic condition is a condition of the body
21  such as a wound or external or internal in-
22  jury, whether of a minor or serious nature
23  caused by a physical force." Penal Code §245
24  can be committed without injury [b]ut § 273.5
25  CANNOT[.] The elements and proof of §§ 273.5
26  and 12022.7 (d) are the SAME[.] See, Blockburger
27  vs. United States, 284 U.S. 299, 76 L. Ed. 306, 52 S.Ct.
28  180 (holding that "where the same act or trans-

25

1    Claim Three. (continued)

2

3    action constitutes a violation of two distinct
4    statutory provisions, the test to be applied
5    to determine whether there are two offenses
6    or only one, is whether each provision requires
7    proof of a fact which the other does not ").
8    Surely, §12022.7(e) can be applied to other
9    Penal Code violations other than §273.5, but
10    12022.7 "commits the elements" of Crime of 273.5.
11    [Petitioner claims Double Jeopardy in regard.]
12    He is being punished twice for the SAME injury
13    to prosecutrix. Section 12022.7(e) cannot stand;
14    "consecutive punishments should not be imposed
15    for violations of separate statutes when only
16    one offense has been committed." Blockerburger,
17    supra. How does California overlook such blatant
18    Error?

19

20       Trial court judge "abused his discretion"
21    on several points of law; [n]one more prejudicial
22    than denial of Defense Theory [and] introduction
23    of propensity evidence. On two occassions, [b]oth
24    erroneous admissions violated Defendant's
25    constitutional right to Notice and Proof
26    "beyond a reasonable doubt" of ONLY his charged
27    offense. Notice [b]ecause he was NOT charged
28    with crimes against another person. To intro-

1　Claim Three. (continued)
2
3　duce evidence of another crime under disguise
4　of Evidence Code § 352 cannot ever be anything
5　but prejudice.] Every criminal offense has it's ele-
6　ments, [n]one of which are "some other" charged
7　or uncharged prior bad acts. The Model Penal
8　Code defines elements: Elements of Crime. To
9　refer to each component of the actus reus, causation,
10　the mens rea, any grading factors and the negative
11　of any defense. Petitioner points to the Sixth
12　Amendment as an Defendant's "defense mechanism".
13　Instant case, the admission of testimony of Cris-
14　ten Marcos concerning an alleged incident oc-
15　curring over 10-years ago is "defenseless"; pe-
16　titioner [w]asn't charged with this incident because
17　there was NO crime. Ms. Marcos pushed petitioner
18　into a window, he reacted to "her aggression" (sic)
19　This testimony was NOT even similar in nature
20　to the alleged crime on trial. It was not only
21　remote in time, it was remote in character. Pe-
22　titioner's Constitutional rights were violated
23　by the introduction of Cristen Marcos testimony.
24　There is no gainsaying the potential for prejudice
25　in the use of propensity evidence. The tendency
26　of such evidence to "overpersuade" the Jury has
27　been acknowledged (Michelson rs. United States
28　(1948) 335 U.S. 469, 475-476; Old Chief rs United

27

1  Claim Three. (continued)

2

3  States (1997) 519 U.S. 172, 181). California uses
4  extrinsic evidence "functually equivalent" as an
5  element of the charged offense, when infact NO
6  concomitaney exists; prior uncharged bad acts
7  are NOT an element of real conduct ⟨the charged
8  offense⟩ nor in the respective Statute. This
9  violates the Sixth Amendment requirement of Notice
10 and Defense of such Notice. To coin the phrase,
11 propensity evidence is "the tail that wags the dog"
12 (only in reverse.) It is well settled, "Othencrimes
13 evidence may not be used to demonstrate indi-
14 vidual's propensity to commit crime". (United
15 States vs. Moore (7th Cir 1997) 115 F.3d 1348); [h]ow
16 [m]uch [m]oreso, [NO crime at all]⟨as in prior un-
17 changed bad acts⟩. Petitioner contends use of
18 prior uncharged bad acts evidence is [un]Consti-
19 tutional ⟨in any format⟩ because such evidence
20 does NOT prove the charged crime. To prove any
21 crime, the evidence "must be proven beyond a
22 reasonable doubt." Propensity evidence is NEVER pro-
23 ven beyond a reasonable doubt; the preponderance
24 standard is ONLY used, and "by a preponderance
25 of the evidence" standard has been held [un]Con-
26 stitutional. [Citations omitted]. Evidence Code
27 §352 in Limine Hearing operates exactly in
28 like manner as bifurcated prior bad acts Hearing

28

1  Claim Three. (continued)

2

3  after the fact, and should meet the SAME burden
4  of proof Standard. Evidence Code 352 and im-
5  plementing Jury Instructions (reference to Evi-
6  dence Codes §§ 1108, 1109, CALJIC No.'s 2.50.01,
7  2.50.02) however worded "fall short of Sixth
8  Amendment Due Process." Since prior convictions
9  cannot be introduced (United States vs. Lattner
10  (6th Cir 2004) 385 F.3d 947 ; Garceau vs. Woodford
11  (9th Cir 2001) 275 F.3d 769) "The possible effect
12  on the jurors of extraneous information is an
13  area of inquiry that is strickly off limits"
14  (United States vs. Humphrey (10 th Cir 2000) 208
15  F.3d 1109) The above Judicial Counsel rulings
16  should put to rest the dictum that Evidence
17  Code 352 provides "to exclude the propensity
18  evidence if it's prejudicial impact outweighs
19  it's probative value"; prior changed or uncharged
20  bad acts will [always] by Federal Law "create
21  substantial danger of undue prejudice, of
22  confusing the issues, of misleading Jurors."
23  (sic) "[O]nce prior convictions are introduced,
24  the trial is, for all practical purposes, com-
25  pleted and the guilty outcome follows as a mere
26  formality" (United States vs. Burkhart, 458 F.2d
27  at 204) This authority contradicts [State] finding
28  that propensity evidence, or criminal disposition,

29

1  Claim Three. (continued)
2
3  had nothing to do with outcome. [Propensity]
4  evidence is [deemed] objectionable, not because
5  it has no appreciable probative value, but
6  because it has too much[.] (People vs Alcala
7  (1984) 36 Cal.3d 604, 631; United States vs
8  Burkhart (10 th Cir 1972) 458 F.2d 201, 204). Also,
9  a jury's tendency to condemn in one case because
10  the defendant escaped punishment elsewhere
11  is one reason propensity evidence was banned
12  for centuries. (People vs. Smallwood (1986) 42
13  Cal.3d 415, 428). Particular errors call out for
14  reversal in light of their nature, i.e. their power
15  to influence the Jury. (United States vs. Harrison
16  (9th Cir 1994) 34 F.3d 886, 892) [Such is with pro-
17  pensity evidence.] California has done in
18  passing Evidence Codes 1108 and 1109, the exact
19  SAME thing found [un] Constitutional in Penal
20  Code § 1170 (b), "created due process separate
21  from Federal Law." See, In re Winship (1970)
22  397 U.S. 358, 364, 90 S.Ct 1068, 25 L Ed 2d 368. Evi-
23  dence Codes §§ 1108, 1109 violate the Due Process
24  Clause of the United States Constitution; hence,
25  CALJIC No.'s 2.50.01 and 2.50.02 are [un] Constitution-
26  al Jury Instructions. Since Determinate Sent-
27  encing Law was in acted, California has con-
28  tinued to pass laws "watering-down" burden

30

1  *Claim Three. (continued)*

2

3  of proof, criminal offenses. The above mention-
4  ed Codes and Instruction, no different[.]
5  Charles Evans Hughes, Chief Justice, United States
6  Supreme Court (1862-1948) expounded: "In a
7  number of cases dissenting opinions have in
8  time become law" [This should NOT be]; the
9  United States Constitution, Article VI, clause 2,
10  the Supremacy Clause, requires that [ ] prevail
11  over a state court's contrary opinion. (Cooper vs.
12  Larson (1958) 358 U.S. 1, 18); Due Process: [e]very
13  element of an crime requires beyond a reasonable
14  doubt, [no exceptions] Federal Law creates a
15  quasi estoppel to Jury Instruction with alter-
16  nate theories of proof. Even the most eloquent
17  wording that includes preponderance of the
18  evidence diminishes beyond a reasonable
19  doubt for the same reason previously mentioned,
20  "possible effect of extraneous information on the
21  jurors" (U.S. vs. Humphrey, supra, 208 F. 3d 1109).
22  However subtle, proponderance [u]ndermines
23  beyond a reasonable doubt, and misses the
24  Mark of Due Process. See, Cool vs. United
25  States (1972) 409 U.S. 100, 104, 93 S. Ct. 354, 34 L. Ed
26  2d 335 (Any jury instruction that "reduce[s] the
27  level of proof necessary for Government to carry
28  it's burden... is plainly inconsistent with the

Claim Three. (continued)

constitutionally rooted presumption of inno-
cence"); in their updated version, CALJIC No.'s
2.50.01, 2.50.02, undermine Court's ken in
Cool, and [p]robably about no one can deny
"highly inflammatory" preponderance evidence
and implicating Jury Instruction creates
"a substantial risk that all exculpatory evi-
dence will be overwhelmed by a jury's fixation
on the human tendency to a conclusion which
is impermissible in law: because he did it
before, he must have done it again" (United
States vs. Bagley (9th Cir) 772 F.2d. 482, 488, cert.
denied, 475 U.S. 1023, 106 S Ct. 1215, 89 L.Ed.2d
326 (1986). Federal law "bars consideration of
evidence concerning the impact of extrinsic
information on the deliberative process" (United
States vs Bagnariol (9th Cir 1981) 665 F.2d 877),
and, instant case, CALJIC No. 2.50.02 DID
exactly what Bagnariol says [cannot] happen.
Christen Marco's testimony entered into the de-
liberation process through what has just been
proven, a Due Process violation[.] The ultimate
question is "whether it can be concluded
beyond a reasonable doubt that extrinsic evi-
dence did not contribute to the verdict."
(Bayramoglu vs Estelle (9th Cir. 1986) 806 F.2d

Claim Three. (continued)

880,887) Petitioner contends prosecutrix's
testimony was "confounded", [not credible], as
shown in Claim Two, the multiple contradictions,
that Jury Instruction 2.50.02 "had substantial
and injurious effect or influence in determin-
ing the jury's verdict." (Brecht rs Abrahamson,
— U.S. —, 113 S.Ct. 1710, 123 L.Ed. 2d 353 (1993)
quoting Kotteakos rs United States, 328 U.S.
750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed 1557 (1946).
[S]trike Cristen Marcos' testimony and left is
an "peculiarly credibility case of questimable
recovered memory." The alleged incident
between prosecutrix and defendant in April
or May of 2003 cannot even be considered [b]e-
cause she gave contradictory accounts and
her account of the incident given to Officer
MacHale (Trial Transcript, p. 345) "no previous vio-
lence in their relationship" (sic) The Point Re-
served, and is petitioner's challenge that,
Evidence Code 352 [and] the Codes in question,
1108, 1109, violate Due Process [w]hen propensity
evidence of other un-charged prior bad acts
are made admissible that such will [a]lways
"create a substantial danger of undo prejudice,
confusion of issues, and mislead Jury." Evi-
dence Code 352 empowers trial court judge

33

1  Claim Three. (continued)

2

3  to make as an element of the charged offense,
4  extraneous evidence [and] ultimately under
5  ensuing Jury Instructions, CalJic No.'s
6  2.50.01, 2.50.02, Jury power to weigh evidence
7  under [two different standards] of proof - beyond
8  a reasonable doubt on charged offense, but
9  preponderance of the evidence for purposes of
10  assessing a defendant's propensity. NO jury
11  should be put in the position of such mental
12  gymnastics, even if they are fully capable.
13  Sixth Amendment dictates Due Process, NOT
14  California Legislature that empowered trial
15  court judge pursuant to Evidence Code 352, in
16  the same way California empowered trial court
17  judge in Penal Code § 1170(b). "[W]hen a court
18  gives the jury instruction that allows it to
19  convict a defendant on an impermissible
20  legal theory, as well as a theory that meets
21  constitutional requirements," the [un]constitu-
22  tionality of any of the legal theories require
23  that the convictions be set aside'" Boyde vs
24  California (1990) 494 U.S. 370, 384-85, 108 L.Ed.
25  2d 316, 110 S.Ct. 1190. The premise is: with
26  Judge giving the instruction Jury would nat-
27  urally believe it's okay; when alternate the-
28  ories are involved, it is "equally likely that...

34

1  Claim Three. (continued)

2

3  the verdict rested on an unconstitutional
4  ground." Id., at 380. The ONLY legal theory
5  of guilt to any criminal offense is "beyond
6  a reasonable doubt." (sic) Jury Instructions
7  must convey both that a defendant is pre-
8  sumed innocent until proven guilty and that
9  he may only be convicted upon a showing of proof
10 beyond a reasonable doubt. (Victor vs. Nebraska
11 (1994) 511 U.S. 1,5,127 L.Ed.2d 583, 114 S.Ct. 1239)
12 The instructions given to petitioner's Jury im-
13 permissibly shifted burden of proof by infusing
14 preponderance proof in 2.50.02, and, peculiarly
15 CalJic. No.'s 2.00 and 2.01 "contradict" CalJic
16 No. 2.50.02.

17            CalJic No. 2.00, states, "Both direct
18            and circumstantial evidence are ac-
19            ceptable as means of proof";
20            CalJic No. 2.01, states, "each fact
21            which is essential to complete a
22            set of circumstances necessary to
23            establish the defendant's guilt
24            must be proved beyond a reasonable
25            doubt...
26 Cal.Jic No. 2.50.02 (as was given to petitioner's Jury)
27 allowed Jury to find by a preponderance of the
28 evidence "circumstances" (of prior unchanged bad,

35

1  Claim Three. (continued)

2

3  acts)___

4  ... In other words, before an in-

5  ference essential to establish

6  guilt may be found to have been

7  proved beyond a reasonable doubt,

8  each fact or circumstance on which

9  the inference necessarily rests must

10  be proved beyond a reasonable doubt."

11  Cal Jic, NO. 2.01

12  Petitioner points out that, the very "circum-

13  stantial evidence" (2.00) to be proven by a

14  "reasonable doubt" standard (2.01) is made null

15  and void by "contradictory" Instruction 2.50.02

16  [and] Cal. Jic No.'s 2.50.1, 2.50.2 (Evidence of other

17  crimes by the defendant proved by a preponderence

18  of the evidence; Definition of preponderance of

19  the evidence); all, which, irrepermissibly shift

20  burden of proof to defendant: "your finding on

21  that issue must be against the party who had

22  the burden of proving-it" (Constitutional Law

23  §268). Faulty jury instructions will violate

24  due process where instruction by itself infects

25  entire trial to such extent that resulting con-

26  viction violates Due Process. U.S.C.A. Const. Amend.

27  Fourteen. See, also, Habeas Corpus §498. Faulty

28  jury instructions will require grant of habeas

36

1  Claim Three. (continued)

2

3  petition. (Same holding.) CalJic No.'s 2,50.01,
4  2.50.02, 2.50.1, 2.50.2, contradict Cal.Jic No.
5  2.90. Ambiguous is "if you find by a preponder-
6  ence of the evidence... that is not sufficient
7  by itself to prove beyond a reasonable doubt..."
8  (CalJic. No. 2.50.02, instant case) [because inser-
9  ence is prior uncharged bad act is element of
10  instant offense, when it is NOT.] Even recidi-
11  vist element must be proven beyond a reasonable
12  doubt, and after the fact, NOT during trial. The
13  Supreme Court precedent (Francis vs. Franklin,
14  471 U.S. 307, 322) HELD "contradictory instruct-
15  ion did not cure the previous error because re-
16  viewing court cannot know which of the two
17  irreconcilable instructions the jurors in reach-
18  ing their verdict" California's revised versions
19  of 2.50.01, 2.50.02 "Language" is still susceptible
20  to an interpretation that removes the prosecution's
21  burden of proving the charged offense beyond a
22  reasonable doubt and creates an unconstitutional
23  mandatory presumption as to the core elements
24  ⟨real conduct⟩ of the crime charged and fore-
25  closes independent jury consideration of the
26  facts ⟨of real conduct⟩ ⟨emphasis supplied⟩.
27  The "Language" of the Jury Instructions above
28  mentioned; their contradictory and burden

37

Claim Three, (continued)

shifting nature; the presumption in 2.50.1 is that jurors have met the burden of proof necessary in 2.00 and 2.01 (as well 2.50.02)(which are contradictory instructions, one legal theory, on impermissible legal theory), the inference being "because he did it before, he must have done it, again"; CalJic No. 2.50.1 allows prosecution to prove the charged crime, subliminally, inherently. The lesser burden of proof violates Due Process. (In re Winship, 397 U.S. 358, 25 L. Ed 2d 368, 90 S.Ct 1068); hence, this being true fact of law, petitioner did NOT receive a Jury Verdict within the meaning of the Sixth Amendment. (Sullivan vs. Louisiana, 508 U.S. 275, 280, 124 L.Ed. 182, 113 S.Ct. 2078)(The essential connection to a "beyond a reasonable doubt" factual finding cannot be made where the instructional error consist of a misdescription of the burden of proof, which vitiates all jury findings. Id., at 281) California MUST be required to [suspend use of Evidence Code 352], to introduce extraneous evidence that ONLY can be prejudicial, [o]utweighing probative value [and] implementing instructions pursuant to 1108, 1109 [b]ecause amounts to subjucation of Jury, [c]annot be deemed harmless error. Petitioner's convictions Reversed and if retrial, the "testimony of Cristen Marcos suspended, barred."

38

1 Claim Three. (continued)

2

3    The Constitutional right of "a meaningful
4 opportunity to present a defense" (See Crane vs
5 Kentucky (1986) 476 U.S. 683, 690) is grounded
6 is Jurisprudence Law. Petitioner was denied such
7 occurring by [b]oth his Defense Counselor [and]
8 "irrational / erroneous" Judicial Rulings. The
9 first error by Defense Counselor was NOT intro-
10 ducing petitioner's first statement made to Officer
11 Mchale (still is missing) which contained credible
12 evidence of girlfriends "stiff legs" which, would
13 have paved the way for such an affirmative defense.
14 Defense Counselor should have argued that, the
15 passage of time was not a factor, citing People
16 rs. Washington (1969) 71 Cal. 2d 1170, 1176, 81 Cal Rptn
17 5, 459 P. 2d 259 (Neither lapse of time between the
18 event and the declarations nor the fact that the
19 declarations were elicited by questioning deprives
20 the statement of spontaneity if it nevertheless appears
21 that they were made under stress of excitement and
22 while the reflective powers were still in abeyance).
23 Petitioner just stated a fact that occurred [w]ith-
24 out any knowledge of it being a possible defense.
25 See, Peoplers. Quintanilla (2005) Case No. A104009
26 (First Appellate District, Division Three, admitted a
27 spontaneous statement taken a few hours after the
28 fact [and] "statement taken the next day".) (sic)

39

Claim Three. (continued)

Defense Counselor failed to cite recent line cases that
would affected trial court's judicial rulings (In re
Greenfield (1970) 11 Cal. 3d 536, 89 Cal. Rptn. 847). The
testimony of Reva Hall should have been allowed.
The Appellate Court erred by making "opinion" to
the mental intent of Defendant in explaining to
his Mother what happened, a spontaneous declara-
tion. Nonetheless, based on California's Evidence
Code 801, subd.(a)(b), Dr. Forte should have been
allowed to express his opinion [b]ecause that is
what Expert Witnesses DO, [e]xpress the Expert Opin-
ion.] Trial court took-it upon itself to be an medical
expert on the issues of possible injuries to a victim.
An opposite effect would be Dr. Forte denying
Judge his discretion. [A]bout no one can say the
outcome of petitioner's trial with Dr. Forte's "com-
plete" testimony of "stiff legs" and "red eyes"
[b]oth symptons of the result of a Seizure. (sic)
See, United States vs. Gray, 105 F.3d 956 (If district
judge so favors prosecution during trial that judge
appears to predispose jury toward finding of guilt
or to take over prosecutorial role, due process viola-
tion occurs). [A]nd, ABA Project on Standard for Crim-
inal Justice Relating to the Defense Function, and
quoting Justice Byrd... "given to the seriousness of
the charged offense defense counsel had no satis-

Claim Three. (continued)

factory rational for not initiating an intense in-
vestigation as to every aspect of defendant's case.
See, In re Ibarra, 60 Cal. at pp. 465-66, 34 Cal. Rptr.
863, 386 P.2d 489, "teaches that by failing to obtain
an adjudication of the stronger of two potential de-
fenses, trial counsel deprives his client of consti-
tutional adequate assistance." People vs Vest (1974)
43 Cal. App. 3d. 728, 736, 118 Cal. Rptr. 84, 88 (Criminal
defense attorneys have a duty to investigate care-
fully all defenses of fact and law that may be avail-
able to defendant). Petitioner was entitled to an
"Expert's Opinion." (sic) Prosecution was allowed
great laditude in questioning Expert Witness,
"theory" on whether recovered memory was valid;
see, United States vs. Hardin (5th Cir 2006) 437 F.3d
463, 468 (when necessary to respond to the govern-
ment's case against [the defendant], where the govern-
ment's case rest[ed] heavily on a theory most com-
petently addressed by expert testimony, constituted
an abuse of discretion). In Hardin, defendant was
denied an expert witness; instant case, denial of
"complete" opinion has same effect, the messenger
was made mute. (sic)

     Petitioner did NOT receive a fair trial [b]e-
cause the Sixth and Fourteenth Amendments require,

41

Claim Three. (continued)

commands procedural regularity by an impartial
judge, in which the defendant is afforded his
or her rights under the United States Constitution,
to include effective assistance of counsel, the op-
portunity to present fully evidence and witnesses
on defendant's defense, rebut all opposition wit-
nesses and evidence with defense theories, the
presence of an impartial jury, with judicial rulings
free of bias. [Any reasonable jurist, reading care-
fully petitioner's Trial and subsequent post proceed-
ings (direct appeal, habeas corpus) can only conclude,
the judicial rulings were NOT consistent with common
law, i.e. trial court judge unduly restricted "theory
of defense" which, Expert Testimony "can" conclude
"in the hypothetical" (Harrison vs. DeYoung (1935) 3
Cal. App. 2d 662, 664— " Frequently it happens when
expert witnesses are testifying that conclusions to
be drawn from the facts stated depend upon pro-
fessional or scientific knowledge or skill not with-
in the range of ordinary training or intelligence.
In such cases not only the facts but the conclu-
sions to which they lead may be testified to quali-
fied experts"); see, also, A1 Credit Corp. vs. Legion
Ins. Co., 265 F.3d 630 (evidentiary foundation is id-
entification of evidence by proponent or authen-
tication of evidence, usually the testimony of wit-

Claim Three. (continued)

ness; no rule of evidence requires a foundation;
foundation is simply a loose term for preliminary
questions designed to establish that evidence is
admissable.) Besides the fact "no rule of evi-
dence requires a foundation" and "qualified
experts ... (may) draw conclusions from facts sta
ted depending upon professional and scientific
knowledge.". [Citations], prosecution's key witness,
Dr. Jose Maldonado laid down "foundation" for
Defense to explore a Seizure Disorder; See, Trial
Transcript, pp. 432, Line 2-21—

> A. Sure. The mental changes surrounding
> Parkinson's desease and dimentia, the
> mental behavioral changes associated
> with traума brain injury, the BIT ef-
> fect of seizures on seizure activity,
> the effect of stroke on other types of
> brain injuries

\* Prosecution's own witness states clearly,
Brain Injury Trauma "can/does" result from a
seizure. (sic) Trial court judge's ruling plain
and simple denied Defendant a viable Defense.
in violation of both California and Federal Law.
Just on this one point of law, reversal should
be granted; see, Notice Of Motion For New Trial And
Points And Authorities, dated, December 6, 2005,.

43

Claim Three. (continued)

hereto included Exhibit [and Argument], this Petition. Petitioner incorporates his State Habeas Corpus Petition as Evidence in Exhibit [and Argument] this Petition that, he was denied a "fair" trial. The issues of his Case are complex and beyond the scope of the inmate legal assistant helping petitioner; petitioner requests an Evidentiary Hearing, with appointment of counsel (perhaps even two) which, inmate paralegal suggests even Defense Counselor, Attorney Steven A. Chase [s]hould have requested a second chair, in Limine. Too many Legal issues, and only obvious by his performance and the incorrect judicial rulings. How did Jury get empaneled without ethnicity balance in an interracial case? Why did Judge take on the role of medical expert? Why wasn't all the text messages, E.P.O.'s, introduced/received into evidence? Key witness testified, "text messages was something done throughout their relationship"; see, Preliminary Hearing, pp. 0016 (was all the foundation needed, for a proper ruling by trial court judge) but, trial court judge/defense attorney were equally at fault, here; nonetheless, such occurring denied Defendant his Due Process right to present evidence favorable to his Defense.

CMC-CE-008
(08/04) 0901

Claim Three. (continued)

Contained in the text messages [and E.P.O.'s] are so many "contradictory statements" made by prosecutrix. The Expert Witnesses all stated, if she truly had recovered her memory, she would remember perfectly, citing Vandeclay:

> "Traumatic memories are, once they are recovered, they are 'exceedingly accurate' compared to memories of not so important events" (Trial Transcript, p. 443)

With prosecutrix's numerous contradicts throughout, certainly should to this Court prove beyond any doubt, "prosecutrix's testimony was a product of confabulation"; she was merely repeating what was implanted in her mind by the will of other's. See, examples in Claim Two. (Mesareosh vs. United States (1956) 352 U.S. 1, 1 L.Ed2d 1, 77 S.Ct. 1 (Truthfulness of testimony... "The dignity of the United States Government will not permit the conviction of any person on tainted testimony.") Why weren't trial court judge's decisions on "hearsay" statement's consistent? Certainly, they were NOT, favored prosecution[.] Why did Defense Counselor allow-it? See, United States vs. Tucker (9th Cir 1983) 716 F.2d 576 (holding counsel ineffective for failing, inter-alia, to object to ad-

1  Claim Three. (continued)

2

3  mission of documentary evidence, failure to make
4  any motions and failure to seek suppression of state-
5  ments). Petitioner refers to Legislature's Intent
6  and Purpose, on Section 1109, which trial court did
7  NOT follow in making his decision to allow testimony
8  of Cristen Marcos: _Legislature's focus_ was "on-going"
9  course of conduct in domestic abuse cases, not one
10  so remote as was allowed, which was not even
11  abuse, but defensive (from Cristen Marcos, aggre-
12  sion was the evidence). Intent under subsection (a)
13  and (b) was peculiarly focused to domestic violence
14  that was "on-going course of conduct" where the abuse
15  in a case before the bar of "one battering episode
16  is part of a larger scheme of dominance and con-
17  trol, a scheme that usually escalates in frequency
18  and severity" (citing Assembly Committee Represents-
19  tives on Public Safety, June 25, 1996, pp. 3-4).
20  But, like everything else California does, they take-
21  it to another level, and dissenting becomes the law.
22  If anything, the Evidence demonstrated the "opposite"
23  between prosecutrix and defendant. See, Trial Trans-
24  cript, p. 345, line 15-18 —

25          Q. Did you tell him (Officer McHale) --
26          listen very carefully. Did you ever
27          say there was _no_ previous evidence of
28          violence in our relationship?

46

Claim Three. (continued)


        A. Yes.

Due Process was denied Defendant when trial court and Appellate Courts did NOT follow Legislative Intent[.] There was No previous domestic abuse instant case; girlfriend (prosecutrix) said so[.]Legislature's Intent should be this Court's ruling. For California: The Government has a special responsibility to ensure the integrity of the criminal judicial process by Living-up to the Code of Professional Ethics and fair play at all times. (United States vs. White (7th Cir 2000) 222 F3d 363). See, Moore vs. Dempsey (1923) 261 U.S. 86-88, 69 L.Ed. 543, 43 S.Ct. 265 (what we have to deal with [on habeas review] is not the petitioner's innocence or guilt, but solely the question whether constitutional rights have been preserved).


        Petitioner, for the aforementioned reasons, respectfully submits that the many cumulative Constitutional errors, denied him a fair trial [and] that, he is "innocent" of the charges. Only a guilty person would accept a no-prison plea bargain agreement.


        Respectfully, submitted,

_____

CMC-CE-008
(08/04) 0901

RICHARD C. NEUHOFF

ATTORNEY

CALIFORNIA STATE BAR NO. 54215

----------------

(860) 229-0433

FAX: (860) 348-1942

11 FRANKLIN SQUARE

NEW BRITAIN, CONNECTICUT 06051

## **CONFIDENTIAL & PRIVILEGED ATTORNEY-CLIENT COMMUNICATION**

November 16, 2006

Mr. Michael Johnson, #F06081
P.O. Box 8103
CMC West 1-4-37U
San Luis Obispo, CA 93403-8103

Dear Michael,

As promised, I am sending you a list of issues that will be raised in the AOB. At this point, the primary issues are:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE ADMISSION OF CRISTEN MARCOS' TESTIMONY CONCERNING AN ALLEGED INCIDENT OF DOMESTIC ABUSE IN JANUARY 1994

EVIDENCE OF A PURPORTED INCIDENT BETWEEN MS. LARA AND APPELLANT IN APRIL OR MAY OF 2003 WAS ERRONEOUSLY ADMITTED AS EVIDENCE OF A PRIOR INCIDENCE OF DOMESTIC VIOLENCE PURSUANT TO EVIDENCE CODE 1109

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO MOVE TO EXCLUDE PURPORTED HEARSAY STATEMENTS MADE BY MS. LARA AT THE HOSPITAL

THE TRIAL COURT IMPROPERLY PREVENTED DR. FOTRE FROM EXPRESSING AN OPINION CONCERNING SEIZURE AS A POSSIBLE CAUSE OF MS. LARA'S INJURIES

THE TRIAL COURT IMPROPERLY PREVENTED DR. MISSETT FROM RELYING ON AN ENTRY IN MS. LARA'S MEDICAL RECORDS THAT INDICATED SHE HAD A MEMORY OF THE INJURY CAUSING EVENT TWO MONTHS BEFORE SHE CLAIMED TO HAVE "RECOVERED" IT

*48*

Mr. Michael Johnson
November 16, 2006
Page 2

## CONFIDENTIAL & PRIVILEGED ATTORNEY-CLIENT COMMUNICATION

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO
ALLOW THE DEFENSE TO ADMIT EVIDENCE THAT APPELLANT HAD
SAID THAT MS. LARA HAD "STIFF LEGS" AS HE WAS ATTEMPTING TO
LIFT HER AND TAKE HER TO THE HOSPITAL

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE
EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY
FAILED TO CROSS EXAMINE MS. LARA ON THE SUBJECT OF
WHETHER HER FATHER HAD ABUSED HER AND/OR FORCED HER TO
LEAVE HIS HOME JUST PRIOR TO HER "RECOVERYING" HER MEMORY

APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY THE
INSTRUCTIONS CONCERNING THE STANDARD APPLICABLE TO THE
OTHER-BAD-ACT EVIDENCE

The brief has to be in the mail no later than Monday, November 20, and has to get
to the print shop early that morning. That date will probably be the same day you receive
this letter, so I suspect you will find this letter not to be the advance notice you were
hoping for, but as I said in my last letter, the AOB will be in the mail to you on November
20, so you will have it in your hand soon and before you need to file a habeas petition.
And by the way, if you do file a habeas petition raising claims of ineffective assistance of
trial counsel, you should (for legal reasons of which you are probably aware by now, but
should also be clear from a reading of the AOB) include all of the ineffective claims that
are in the AOB.

Take care.

Sincerely,

Richard C. Neuhoff

49

1    a. _same_

2    b. _Motion to Amend_

3    c._____

4    d._____

5    Result: _denied_ Date of Result:_____

6    III.   Name of Court: _Supreme Court of California_

7    Type of Proceeding: _habeus corpus_

8    Grounds raised (Be brief but specific):

9    a. _same_

10    b. _Jury selection process deficient; I.A.C.;_

11    c. _equal protection trial court imposed illegal_

12    d. _enhancement denied defense theory denied_

13    _fair trial. actual innocence_
Result: _denied_ Date of Result: _May 14, 2008_

14    IV.   Name of Court: _n.a._

15    Type of Proceeding: _n.a._

16    Grounds raised (Be brief but specific):

17    a. _n.a._

18    b. _n.a._

19    c. _n.a._

20    d. _n.a._

21    Result: _n.a._ Date of Result: _n.a._

22    (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23    Yes _____ No _X_

24    Name and location of court: _n.a._

25  **B. GROUNDS FOR RELIEF**

26    State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3   of these cases:

4   _____

5   _____

6   _____

7   Do you have an attorney for this petition?                          Yes_____         No_____

8   If you do, give the name and address of your attorney:

9   _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on _____          _____

14              Date                                       Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS

S158827

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re MICHAEL TYRONE JOHNSON on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

MAY **1 4** 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**

_____
Chief Justice

58

# TABLE of CONTENTS

Proof of Service                                                                i

Petition for Writ of Habeas Corpus                                    1-53

Attachment A_

    Petition for Review, Denial, Sept. 12, 2007

    Petition for Writ of Habeas Corpus, Denial,
       May 30, 2007

    Direct Appeal, Denial, May 30, 2007,
       with Opinion, pp. 1-48

    Petition for Rehearing, Brief, A112322,
       pp. 1-6

    Petition for Review, Brief, S154179,
       pp. 1-41

Attachment B_

    Attorney Letter to Probation Dept.

    Judicial Counsel Form MC-002, with
       Associate Rules, Questionair

Attachment C_

    Original Petition for Writ of Habeas
       Corpus, A116950, pp. 1-264

**(VERIFICATION – 446, 2015.5 C.C.P.)**

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

I am the party of the above entitled actions, a citizen of the United States, over the age of eighteen years  and a resident of San Luis Obispo County. My current address is:

*Michael Johnson* CDC No. *F06081*
California Men's Colony-West
P.O. Box 8103 ˙ Unit___/___Dorm_*4*___Bed_*37LL*
San Luis Obispo, California  93403-8103

I CERTIFY (OR DECLARE), UNDER THE PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND
CORRECT. EXECUTED ON _____, 20___, AT SAN LUIS OBISPO, CALIFORNIA, 93403-8103

PETITIONER. *Michael Johnson*

**PROOF OF SERVICE BY MAIL**

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

I AM A RESIDENT OF SAID COUNTY, OVER THE AGE OF EIGHTEEN YEARS, AND NOT A PARTY TO THE ABOVE
ENTITLED ACTION. MY STATE PRISON ADDRESS IS:

( *Reva Johnson  Hall* )     *Michael Johnson* CDC No. *F06081* ≤ *C*
( *368 Imperial Way* )        California Men's Colony-West
( *#105 Daly City  CA* )      P.O. Box 8103 — Unit / — Dorm / — Bed *37*
( *94015* )                   San Luis Obispo, California  03403-8103

ON _____, 20___, I SERVED THE WITHIN *Petition for Writ of Habeas*
*Corpus / Exhibits*

ON THE PARTY: *Supreme Court of California*

IN SAID ACTION, BY PLACING A TRUE COPY THEREOF IN A SEALED ENVELOPE WITH POSTAGE THEREON
PREPAID, IN THE UNITED STATES MAIL, AT CALIFORNIA MEN"S COLONY, SAN LUIS OBISPO, CA. 93403-8103,
ADDRESS AS FOLLOWS:

_____*350 McAllister Street*_____
_____*San Francisco CA*_____
_____*94102-7303*_____

I DECLARE, UNDER THE PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED
ON _____, 20_____, AT SAN LUIS OBISPO, CALIFORNIA

SIGNATURE OF DECLARANT
*Reva Johnson Hall*

(REV. 9/02)

60

**(VERIFICATION – 446, 2015.5 C.C.P.)**

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

I am the party of the above entitled actions, a citizen of the United States, over the age of eighteen years and a resident of San Luis Obispo County.  My current address is:

*Michael Johnson* CDCR No.: *FN6081*
California Men's Colony-West
P.O. Box 8103 / Unit _*1*_ Dorm _*4*_ Bed _*37LL*_
San Luis Obispo, California 93403-8103

I CERTIFY (OR DECLARE), UNDER THE PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT.
EXECUTED ON *7/08/08*, AT SAN LUIS OBISPO, CALIFORNIA, 93403-8103.

PETITIONER (Signature)
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PROOF OF SERVICE BY MAIL**

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

I am not the party of the above entitled actions, a citizen of the United States, over the age of eighteen years and a resident of San Luis Obispo County.  My current address is:

*Reva Johnson Hall*
*360 Imperial Way #105*
*Daly City CA 94015*

ON *07/12/08* I SERVED THE WITHIN *Petition For Writ Of Habeas Corpus*
ON THE PARTY: *United States District Court, Northern District Of California // Attorney General Of California, San Francisco*

IN SAID ACTION, BY PLACING A TRUE COPY THEREOF IN A SEALED ENVELOPE WITH POSTAGE THEREON PREPAID, IN THE UNITED STATES MAIL AT CALIFORNIA MEN'S COLONY, SAN LUIS OBISPO, CA 93403-8103, ADDRESS AS FOLLOWS:

| | |
|---|---|
| *United States Courthouse* | *455 Golden Gate Ave.* |
| *450 Golden Gate Ave.* | *Suite 11000* |
| *San Francisco CA* | *San Francisco CA* |
| *94102-3483* | *94102-7004* |

I CERTIFY (OR DECLARE), UNDER THE PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT.
EXECUTED ON *07/12/08*, AT SAN LUIS OBISPO, CALIFORNIA, 93403-8103.

DECLARANT (Signature)

(REV. 9/02)

-*1*-